IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MILTON HOUSTON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:22-CV-142-MAB |
| | ) |
| **JOSEPH AUMILLER, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on Defendants Joseph Aumiller and Kyler West's Motion to Exclude Expert Report and Testimony (Doc. 66) and Defendants' Motion for Summary Judgment (Docs. 67, 73). For the reasons set for below, the Court GRANTS Defendants' Motion for Summary Judgment (Doc. 67) and DENIES as MOOT Defendants' Motion to Exclude (Doc. 66).

### BACKGROUND

Plaintiff Milton Houston, the father and independent administrator of the Estate of Frederick Houston ("Plaintiff"), brings this action against Defendants Aumiller and West for claims related to the death of Frederick Houston (hereinafter "Houston") while he was incarcerated at Lawrence Correctional Center on January 25, 2020 (Doc. 1). At all times relevant to Plaintiff's Complaint, Defendants Aumiller and West were correctional officers within the Illinois Department of Corrections ("IDOC") working at Lawrence (*see* Doc. 74 at p. 3). On January 24, 2025, Houston was moved to the B wing in the segregation housing unit at Lawrence (*Id.* at p. 5). That same evening, Houston initiated a hunger

strike at dinner, which he remained on until his death the following day (*Id.*). Plaintiff testified that he spoke to Houston after his placement in segregation and he seemed "okay." (*Id.* at p. 8).

On January 25, 2025, Defendant West worked the 7:00 a.m. to 3:00 p.m. shift and was assigned to the B wing of the segregation housing unit at Lawrence (*Id.* at p. 4). Defendant Aumiller worked the 3:00 p.m. to 11:00 p.m. shift on the B wing of Lawrence's segregation housing unit (*Id.* at p. 2). At one point during Defendant Aumiller's shift, he spoke with Houston at his cell (Doc. 84 at p. 23). Thereafter, at 7:50 p.m. on January 25, 2020, Houston was founding hanging from a light fixture in his cell with a bedsheet tied around his neck (Doc. 74 at p. 5). Houston was subsequently pronounced deceased after resuscitation efforts proved unsuccessful (Doc. 73-8).

Following Houston's death, an investigation was conducted by Investigator Marc Hodge (Doc. 74 at p. 5). Investigator Hodge interviewed several inmates in the course of his investigation, including Inmate Sims and Inmate Pryor (*Id.* at pp. 5-6). Inmate Pryor testified that Houston repeatedly called for crisis support during both Defendants' shifts because "he was going to harm himself." (*Id.* at pp. 6 & 18-19; *see also* Doc. 73-11 at transcript pp. 18-21). Likewise, Inmate Sims testified that he heard Houston call for crisis support multiple times on January 25, 2020, and the entire segregation unit could hear his calls (Doc. 74 at p. 5; Doc. 73-9 at transcript pp. 11-12). Furthermore, Investigator Hodge determined that Defendant Aumiller violated standards of conduct by falsifying wing logbooks to indicate that he conducted wing checks at times when he was not even present in the segregation unit (Doc. 74 at p. 7). Additionally, Investigator Hodge

determined that Defendant West failed to properly document Houston's third consecutive refusal of a meal and report it to his supervisor (Doc. 84 at p. 27).[1]

## DISCUSSION

Two motions are presently before the Court: (1) Defendants' Motion to Exclude Expert Report and Testimony of Plaintiff's Disclosed Expert (Doc. 66); and (2) Defendants' Motion for Summary Judgment (Doc. 67; *see also* Doc. 73). Because Defendants' Motion for Summary Judgment is dispositive, the Court addresses that motion before analyzing the Defendants' Motion to Exclude.

### I. *Defendants' Motion for Summary Judgment (Doc. 67)*

#### a. *Summary Judgment Standard*

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law.'" *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (quoting FED. R. CIV. P. 56(c)). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Substantive law determines which facts are considered material. *See Jaranowski v. Indiana Harbor Belt R.R. Co.*, 72 F.4th 744, 749 (7th Cir. 2023). Moreover, although a non-movant receives the benefit of conflicting evidence and reasonable inferences, he or she is still required to

---

[1] Additional facts and evidence, as well as factual disputes, will be discussed further in the Court's analysis when relevant.

produce evidence sufficient to establish the essential elements of his or her claims. *Jackson v. Sheriff of Winnebago County, Illinois*, 74 F.4th 496, 500 (7th Cir. 2023).

    b. <u>Analysis</u>

Defendants argue they are entitled to summary judgment on Count I, Plaintiff's Eighth Amendment deliberate indifference claim, for two reasons (*see* Doc. 73 at pp. 12-17). First, they argue Plaintiff has not provided any credible evidence tending to demonstrate that Houston called for crisis support (*Id.* at pp. 12-14). Second, they argue Plaintiff has not provided any evidence which would establish that they subjectively knew of the risk that Houston would commit suicide and disregarded that risk (*Id.* at pp. 15-17). Similarly, Defendant Aumiller argues that he is entitled to summary judgment on Plaintiff's Eighth Amendment failure to protect claim because Plaintiff has not provided evidence that Defendant Aumiller had subjective knowledge that Houston posed an imminent suicide risk and acted with a sufficiently culpable state of mind (*Id.* at pp. 17-21).

"In order to prevail on a deliberate indifference claim, a plaintiff must show (1) that his condition was 'objectively, sufficiently serious' and (2) that the 'prison officials acted with a sufficiently culpable state of mind.'" *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). Here, Defendants do not dispute that Houston's suicide was an objectively serious medical condition or harm which satisfies the first element of a deliberate indifference claim (*see* Doc. 73 at p. 12) (citing *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). *See also Goodvine v. Ankarlo*, 9 F. Supp. 3d 899, 934 (W.D. Wis. 2014) ("Suicide, attempted suicide and other acts of self-harm clearly pose a 'serious' risk to an inmate's health and

safety."); *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) ("Suicide is a 'serious harm' and prison officials must take reasonable preventative steps when they are aware that there is a substantial risk that an inmate may attempt to take his own life."). Rather, Defendants' argument is that Plaintiff has not presented evidence from which a reasonable jury could find that they "***knowingly*** and unreasonably failed to respond to an objectively serious risk of harm." *Johnson v. Garant*, 786 Fed. Appx. 609, 610 (7th Cir. 2019) (emphasis added).

Pertinently, "[w]here the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins*, 462 F.3d at 761. "In other words, the defendant must be cognizant of the significant likelihood that an inmate may imminently seek to take his own life." *Id.* Here, there is no question that Defendants did not take any steps to protect Houston from self-harm, "so the only question is whether [Plaintiff] raised a genuine issue of material fact about [Defendants'] subjective knowledge of a substantial risk of self-inflicted harm." *Johnson*, 786 Fed. Appx. at 610.

Defendants first argue they lacked subjective knowledge of Houston's substantial and imminent suicide risk because there is no credible evidence that they heard Houston's requests for crisis support. Given the conflicting evidence and the current stage of proceedings, this argument is unpersuasive, and the Court will not devote substantial time to it. Plaintiff cited several pieces of evidence tending to demonstrate

that Houston called out for crisis support during both of Defendants' shifts and that those cries could be heard by Defendants (*see, e.g.*, Doc. 73-8 at p. 6; Doc. 73-11 at transcript pp. 18-24).² While Defendants challenge the credibility of this evidence, such a challenge constitutes a factual dispute that is appropriately suited for the jury. *See In re Horizon Group Mgmt.*, LLC, 652 B.R. 764, 782 (Bankr. N.D. Ill. 2023) ("It is outside the judge's province to assess the credibility of evidence on a summary judgment motion.").

Nevertheless, assuming Defendants heard Houston's requests for crisis support, the fatal flaw underlying both of Plaintiff's claims is that no evidence has been offered from which a reasonable jury could conclude that Defendants were actually "cognizant of the significant likelihood that [Houston] may imminently seek to take his own life" after having heard Houston's requests for crisis support. *Collins*, 462 F.3d at 761. In *Collins*, the Seventh Circuit considered whether several defendants were subjectively aware of the plaintiff's substantial risk of committing suicide when those defendants knew the plaintiff had requested to see a crisis counselor, but did not know his reason for

---

² Significantly, in arguing that no credible evidence supports Plaintiff's contentions, Defendants have conceded that a factual dispute exists as to whether Houston alerted Defendants to his need for crisis support. Specifically, Defendants have recognized that at least three inmates claim to have heard Houston yell out for crisis support (Doc. 73 at pp. 4-5; *see also* Doc. 73-8 at pp. 3 & 6). In fact, Defendants acknowledge that Inmate Pryor stated that he had heard Houston yell out for crisis support and speak to Defendant West during his shift (Doc. 73-8 at p. 6; *see also* Doc. 73-11 at pp. 6-7). In addition, Inmate Pryor testified that he also called out for crisis watch on Houston's behalf during Defendant West's shift (Doc. 73-11 at p. 7, transcript p. 22). Likewise, Inmate Pryor stated Houston called out for crisis support three to four times during the 3:00 p.m. to 11:00 p.m. shift worked by Defendant Aumiller and three other inmates also yelled out to Defendant Aumiller on Houston's behalf (Doc. 73-11 at p. 7, transcript pp. 22-23). Inmate Sims also testified that he heard Houston call out for a crisis team during the afternoon shift (Doc. 73-9 at p. 4, transcript p. 11). Furthermore, Defendants and another correctional officer all testified that they could hear from the front desk when inmates called out to them (Doc. 84 at pp. 5 & 35) (Defendants admitted these points, but argue they are immaterial) (*see also* Doc. 77-13) (containing an image showing the location of the correctional officer's desk in the segregation unit). As such, there is ample evidence to demonstrate a factual dispute as to whether Defendants heard Houston's requests for crisis support.

the request. *Id.* In affirming the district court's decision to grant summary judgment, the Seventh Circuit explained that:

> These defendants were made aware that Collins had requested to see the crisis counselor, but they were not informed of the reason for the request. The undisputed facts of record indicate that inmates often request meetings with crisis counselors for reasons both serious and mundane, and sometimes make such requests as a means of manipulating prison staff. Thus, a request to see a crisis counselor, standing alone, is not sufficient to put a defendant on notice that an inmate poses a substantial and imminent risk of suicide.

*Id.*

More recently, the Seventh Circuit reiterated its holding from *Collins* in *Johnson v. Garant*, 786 Fed. Appx. 609, 610 (7th Cir. 2019). In *Johnson*, the plaintiff told the defendant guards that he was feeling suicidal and requested to speak to a crisis counselor. *Id.* Significantly, the Seventh Circuit found those statements were insufficient to demonstrate the defendants' subjective knowledge of the plaintiff's substantial risk of suicide because "a reasonable jury could not find that the defendants knew of a substantial risk of suicide based only on Johnson's statements that he felt suicidal and wanted to speak to a crisis counselor." *Id.* The Seventh Circuit then distinguished Johnson's case from *Sanville v. McCaughtry*, 266 F.3d 724, 737-38 (7th Cir. 2001), because in *Sanville* numerous other pieces of evidence, when accepted as true, "did more than tell guards that he planned to commit suicide." *Johnson*, 786 Fed. Appx. at 610-11 (citing *Sanville*, 266 F.3d at 737-38) (for instance, the guards in *Sanville* knew that the plaintiff had written a last will and testament, had previously attempted suicide, was no longer eating and was dangerously thin, and had even received a call from the plaintiff's mother to

warn them that the plaintiff was paranoid and suicidal). *See also Gevas v. McLaughlin*, 798 F.3d 475, 480-81 (7th Cir. 2015) (In the context of an Eighth Amendment claim alleging a failure to protect from another prisoner, "[c]omplaints that convey only a generalized, vague, or stale concern about one's safety typically will not support an inference that a prison official had actual knowledge that the prisoner was in danger.").

Here, the Seventh Circuit's analysis and ultimate conclusions in both *Johnson* and *Collins* are instructive. There is no evidence to suggest that Defendants were **subjectively aware** that Houston's requests for crisis support were made because Houston posed a "**substantial and imminent risk** of suicide." *Collins*, 462 F.3d at 757 (emphasis added). As in *Johnson*, even when viewing the evidence in the light most favorable to Plaintiff, the only evidence that Houston expressed his intent to harm himself comes from statements made by Inmate Pryor that Houston "asked to be put on crisis – because he was going to harm himself." (Doc. 73-11 at transcript p. 18).[3] But, the Seventh Circuit's decision in *Johnson* makes clear that even crediting Inmate Pryor's testimony, that is still not enough to create a triable issue about whether Defendants were subjectively aware of a substantial risk Houston would imminently attempt to commit suicide. 786 Fed. App'x 610 (plaintiff's statements that "he felt suicidal and wanted to speak to a crisis counselor" were not enough for a reasonable jury to find that defendants knew of a substantial risk

---

[3] Inmate Pryor was subsequently asked about this statement by defense counsel and he reiterated that every time Houston called out, he said he wanted a crisis team because he was "going to harm himself." (Doc. 73-11 at transcript p. 61). Additionally, Inmate Pryor stated that he overheard Defendant West tell Houston to "kill yourself then" when Houston allegedly told Defendant West that he wanted to go on crisis watch (*Id.* at transcript p. 44). However, Inmate Pryor qualified this statement by admitting that Defendant West "plays a lot, so he always makes jokes and rude comments as to kill yourself and things like that. So, no, can't take him seriously." (*Id.*).

of suicide). *See also Boynton v. Kaeder-Schneider*, 23-CV-368-WMC, 2025 WL 26718, at *4 (W.D. Wis. Jan. 3, 2025) (explaining that officers are entitled to exercise reasonable discretion in assessing suicide risks and "the mere mention of 'suicidal thoughts' is not enough to put a reasonable officer on notice of a substantial risk of imminent harm without a more concrete threat or at least a credible, specific threat of self-harm."). Ultimately, the Seventh Circuit caselaw in this realm leaves little room for doubt and makes clear that to survive summary judgment, stronger evidence of Defendants' subjective awareness is required before "a reasonable jury could find that the defendants knowingly and unreasonably failed to respond to an objectively serious risk of harm." *Johnson*, 786 Fed. Appx. at 610. *See also Williams v. Stacy*, 18-C-1426, 2020 WL 6136148, at *2 (E.D. Wis. Oct. 19, 2020) ("To meet this standard, a prisoner must do more than tell guards that he planned to commit suicide. There is nothing in the record to suggest that Williams would imminently attempt to harm himself.") (internal quotation marks and citation omitted); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 990 (7th Cir. 1998) ("Placing a pre-trial detainee on some level of suicide watch, even the highest level, does not demonstrate a subjective awareness of a substantial risk of imminent suicide."); *Novak v. McIlvain*, 21-CV-81-JDP, 2022 WL 7464096, at *6 (W.D. Wis. Oct. 13, 2022) ("Even if a defendant should have known that an inmate was suicidal, there's no liability unless the defendant actually did know about a substantial risk of suicide.").[4]

---

[4] In fact, Inmate Sims' testimony further supports this point (Doc. 73-9 at transcript p. 9). Inmate Sims stated that he did not think it was anything serious when Houston was calling for crisis support, because inmates in segregation were "fake calling the crisis team … just to get attention because the CO don't give them a request slip or the CO ain't come to the door." (*Id.*).

Page 9 of 17

Having comprehensively reviewed the record and the parties' exhibits, the Court has not identified any evidence that demonstrates that Defendants Aumiller and West were subjectively aware that Houston would imminently attempt to commit suicide. It is true that there are records that indicate Houston previously attempted to commit suicide (Doc. 73-14). However, Plaintiff did not cite any evidence or raise any argument that Defendants were personally aware of those prior suicide attempts; and in fact, both Defendants have testified to not being aware of Houston's mental health problems (Doc. 73-2 at transcript pp. 36-37; Doc. 73-3 at transcript p. 51). *See Williams v. Stacy*, 2020 WL 6136148 at *2 (emphasizing that the defendant did not have personal knowledge of the plaintiff's previous acts of self-harm).

Plaintiff next argues that Houston's hunger strike and Defendants' mistakes in logging his hunger strike and conducting wing checks further demonstrate Defendants' deliberate indifference to Houston's health. The Court is not persuaded by either argument. Houston initiated a hunger strike on January 24, 2020, meaning he had missed one days' worth of meals at the time of his death (*see* Doc. 77-3 at pp. 5-6). Here, Defendants' knowledge of Houston's hunger strike does not demonstrate or support the reasonable inference that Defendants were subjectively aware that Houston posed an imminent suicide risk, especially given that Houston's hunger strike had only lasted one day at the time of his death. *See Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011) (explaining that there are no Eighth Amendment concerns raised by hunger strikes that merely results in weight loss and temporary discomfort). Moreover, while Defendants' mistakes in documenting Houston's hunger strike may very well be negligent behavior

on their part, those errors in no way demonstrate that Defendants were subjectively aware that Houston may imminently commit suicide. Quite simply, Plaintiff has not connected the dots by showing how Defendants' knowledge of his hunger strike and the related reporting mistakes evinces Defendants' subjective awareness that Houston posed an imminent suicide risk.

Tellingly, in *Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650 (7th Cir. 2012), the Seventh Circuit faced a similar issue.[5] In *Rice*, the decedent's estate brought a deliberate indifference claim against jail guards for failing to protect the decedent from self-harm after he was found dead in his cell due to the excessive consumption of water. *Id.* at 662. Given the conflicting evidence presented, the Seventh Circuit assumed that the defendant guards had failed to conduct hourly checks of the administrative segregation unit on the night of the decedent's death. *Id.* at 678-79. Accordingly, the Seventh Circuit explained that a "factfinder might conclude that the guards exhibited a generalized recklessness with respect to the safety of the inmates housed on Ward One by failing to conduct hourly checks of the administrative segregation unit." *Id.* at 679. However, "even if the guards recklessly failed to conduct hourly checks as they were required to do, no reasonable factfinder could find that they knew of, and were deliberately indifferent to, a risk that

---

[5] Admittedly, *Rice* has been abrogated on other grounds following the Supreme Court's holding in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). This is because *Rice* dealt with pretrial settings, but applied the Eighth Amendment's approach of requiring objective harm plus subjective intent, as was the norm prior to *Kingsley*. *See Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) ("Our pre-*Kingsley* cases follow the Eighth Amendment's approach (i.e., objective harm plus subjective intent) to pretrial settings."). However, while *Rice* has been abrogated insofar as it relates to pretrial detainees, *Rice* is still instructive to this case because *Rice* applied the same standards currently applicable to Plaintiff's Eighth Amendment claims.

Rice might come to medical harm like cardiac arrhythmia brought on by water toxicity were he not checked on regularly." *Id.* at 680.

For similar reasons to those in *Rice*, here, Defendants' failure to conduct wing checks as required constituted a violation of job duties and it may also be indicative of Defendants' negligence. However, without any evidence to indicate that Defendants' failure to properly conduct wing checks occurred at a time when Defendants possessed subjective knowledge of Houston's imminent risk of suicide, this negligence is insufficient to demonstrate Defendants' deliberate indifference to the specific risk that Houston may imminently commit suicide. *See, e.g.*, *Goodvine*, 9 F. Supp. 3d at 934 ("Liability under the deliberate-indifference standard requires more than negligence, gross negligence or even recklessness; rather, it is satisfied only by conduct that approaches intentional wrongdoing[.]"); *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Put another way, Defendants' failure to properly conduct and log wing checks demonstrates that Defendants were failing to perform their job duties, but without more, it does not provide evidence that Defendants were subjectively aware of the risk that Houston may imminently commit suicide and chose to turn a blind eye to that risk. *See Brandon v. Smith*, 06-1316, 2010 WL 11643322, at *17 (C.D. Ill. Aug. 18, 2010) (The defendants' failure to comply with job duties and conduct cell checks every 30

minutes, while incomprehensible to the court, was not material because no evidence demonstrated that the defendant "actually knew that Nicholson was a suicide risk.").[6]

Plaintiff similarly avers that Defendants should not be permitted to escape liability under a deliberate indifference standard when their failure to properly conduct wing checks and report Houston's hunger strike effectively amounted to "burying their heads in the sand." But Plaintiff's claims in this action are brought under the Eighth Amendment (*see generally* Doc. 1), and as noted above, this standard requires Plaintiff to identify evidence that tends to demonstrate that Defendants were subjectively aware to Houston's substantial and imminent risk of suicide.[7] *See Collins*, 462 F.3d at 757.

---

[6] In this regard, the parties have disputed the significance of Plaintiff's expert's report (*see* Doc. 77-7), which generally discusses Houston's placement and timeline in segregation, Defendants' interactions with Houston, and Defendants' mistakes in performing their job duties. Significantly, while the report provides some evidence as to what a reasonable officer may have done or realized under the circumstances, it does not provide any evidence as to what Defendants subjectively believed. Therefore, although the report is helpful in identifying Defendants' misconduct and pointing out ways that the tragedy which unfolded in this case could have been avoided, it does not provide any evidence that could help identify what Defendants' subjective beliefs were (*see Id.*).

[7] This distinction is significant to the Court's analysis because, for claims involving the failure to protect detainees or arrestees raised under the Fourteenth or Fourth Amendments, the question is whether the defendant guards' actions were "objectively unreasonable." *See Estate of Wallmow v. Oneida Cnty.*, 99 F.4th 385, 391 (7th Cir. 2024); *Kemp v. Fulton Cnty.*, 27 F.4th 491, 495 (7th Cir. 2022) ("Following *Kingsley, Miranda*, and *Hardeman*, a plaintiff such as Kemp challenging the conditions of his pretrial detention need show only that a defendant's conduct was 'objectively unreasonable.'"). In contrast, claims involving convicted inmates are made under the Eighth Amendment and require showing that "defendants subjectively appreciated that risk." *Estate of Wallmow by Matthew v. Oneida Cnty.*, 22-CV-241-JDP, 2023 WL 3535575, at *5 (W.D. Wis. May 18, 2023); *see also Pittman by & through Hamilton v. Madison Cnty., Illinois*, 108 F.4th 561, 567 (7th Cir. 2024) ("These 'different constitutional provisions' lead to 'different standards.' Yet for many years we 'assessed pretrial detainees' medical care (and other) claims under the Eighth Amendment's [subjective] standards.' That changed in *Kingsley*."). Thus, while Plaintiff may have had more success in demonstrating that Defendants' failure to conduct wing checks and respond to Houston's shouts were objectively unreasonable, here Plaintiff was required to provide evidence evincing Defendants' subjective awareness – undoubtedly a tougher task. *See Widdows v. Jackson Cnty.*, 3:22-CV-00200-NJR, 2024 WL 3636664, at *11 (S.D. Ill. Aug. 2, 2024) ("It is further settled that federal claims arising under a Fourteenth Amendment's objective reasonableness standard … are subject to a less demanding standard than claims arising under the Eighth Amendment.").

Therefore, when looking at both Defendants' failure to conduct and log wing checks, and to properly report Houston's hunger strike, the dispositive question is whether a reasonable factfinder could find that Defendants were subjectively aware (and thus, deliberately indifferent) of the risk that Houston may imminently commit suicide. Crucially, without more, neither Defendants' failure to properly report Houston's hunger strike nor their failure to conduct or log wing checks provides evidence that Defendants were subjectively aware of the risk that Houston may imminently commit suicide. *See Rice*, 675 F.3d at 680; *Jones v. Mathews*, 2 F.4th 607, 614 (7th Cir. 2021) ("But even if we assume that a reasonable factfinder could conclude that Mathews recognized that Frazier was suffering from withdrawal, no reasonable factfinder could determine that Mathews knew of, and was indifferent to, a risk that Frazier might die from diphenhydramine toxicity from ingesting smuggled pain medication."); *Brandon*, 2010 WL 11643322 at *17 ("Plaintiff argues that *Thomson* does not dispose of the key issue, namely whether Hulse's failure to conduct cell checks every 30 minutes is evidence of deliberate indifference. Plaintiff posits that 'if Defendant Hulse was aware that Mr. Nicholson was at risk, then his flagrant failure to conduct cell checks may constitute deliberate indifference.' As noted above and as Plaintiff concedes in that statement, this breach of duty is material if and only if Hulse actually knew that Nicholson was a suicide risk."); *Novak*, 2022 WL 7464096 at *17 (A jury could find the defendant made many mistakes in her treatment of the decedent and even that she destroyed documents to cover up her mistakes, which were "serious issues that call into question [the defendant's] competence and ethics. But the Eighth Amendment sets a 'high hurdle' for liability." And even with the evidence of

errors and misconduct, "no reasonable jury could find that [the defendant] knew Novak was suicidal at the time he died[.]").

This is not to say that Defendants' conduct can be condoned in any way. Certainly, failing to timely conduct wing checks, the falsification of wing check records, and Defendants' hunger strike reporting lapses represent serious violations of their job duties and are unacceptable. The issue, however, is that to survive summary judgment on a deliberate indifference claim even with these troubling facts regarding Defendants, Plaintiff still needed to adduce evidence that could create a triable issue of fact as to whether Defendants were subjectively aware that Houston posed an imminent suicide risk and then chose to turn a blind eye to that risk. *See Rice*, 675 F.3d at 679-80; *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983) ("Even if the defendants disregarded one or more of their established procedures, such as checking the cells every hour or effectively monitoring by visual or auditory systems the activities of prisoners incarcerated at a distance from the main booking room, the actions of the defendants do not constitute deliberate disregard for the possibility that Ward would take his own life."). When viewed collectively and in a light most favorable to Plaintiff, Defendants' knowledge of Houston's request for crisis support which contained a vague, generalized statement that he may harm himself, and Defendants' errors in performing their job duties do not demonstrate that Defendants were deliberately indifferent to the risk that Houston would imminently take his own life. "The deliberate indifference standard imposes a high hurdle for a plaintiff to overcome." *Collins*, 462 F.3d at 762. *See also Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) ("Deliberate indifference occupies a

space slightly below intent and poses a high hurdle and an exacting standard requiring something approaching a total unconcern for the prisoner's welfare in the face of serious risks.") (internal quotation marks and citations omitted).

The Court recognizes that Houston's death is tragic, and that tragedy may be made all the more difficult by the outcome of this case. However, the Court's task is to apply the facts of this case to the law at hand, which includes numerous Seventh Circuit cases that are either on point or closely analogous, as well as many district court cases from this Circuit that provide persuasive authority. And in so doing, the Court concludes that Plaintiff has failed to overcome the high hurdle of the deliberate indifference standard. Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to both Counts I and II (Doc. 67; *see also* Doc. 73).

## II.     *Defendants' Motion to Exclude Expert Report and Testimony (Doc. 66)*

Defendants also filed a Motion to Exclude Expert Report and Testimony of Plaintiff's Disclosed Expert, Tim Gravette (Doc. 66). However, in light of the Court's decision to grant Defendants' Motion for Summary Judgment, this motion is hereby DENIED as MOOT (Doc. 66).

### CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is **GRANTED** (Doc. 67). As a result, Defendants' Motion to Exclude Expert Report and Testimony is **DENIED as MOOT** (Doc. 66).

Accordingly, both Defendants Aumiller and West are **DISMISSED with prejudice** and therefore, this case is likewise **DISMISSED with prejudice.**

The Clerk of Court is directed to enter judgment and close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED: March 24, 2025**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**
